# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

# IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,    )
           )
     Plaintiff,   )
           )
           )
   v.       )   Cr. ID. No. 0111002808
           )
           )
ANDRE FLETCHER,    )
           )
     Defendant.  )
           )

Submitted: April 5, 2015
Decided: May 19, 2015

# COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE DENIED.

Andrew J. Vella, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Brian J. Chapman, Esquire, 1232 N. King Street, Suite 300, Wilmington, Delaware 19801, Attorney for Defendant Andre Fletcher.

PARKER, Commissioner

This 19th day of May, 2015, upon consideration of Defendant's Motion for Postconviction Relief, it appears to the Court that:

## BACKGROUND AND PROCEDURAL HISTORY

1. On December 17, 2001, Defendant Andre Fletcher was indicted on the charges of Murder in the First Degree, Possession of a Firearm during the Commission of a Felony and Possession of a Deadly Weapon by a Person Prohibited. These charges stemmed from an incident that occurred on November 3, 2001 in which Defendant admittedly fatally shot Richard Holland but claimed that he acted in self-defense.

2. On December 19, 2002, a Superior Court jury found Defendant Fletcher guilty of the lesser-included offense of Murder in the Second Degree and Possession of a Firearm during the Commission of a Felony. At the conclusion of the jury trial, the trial judge found Defendant guilty of Possession of a Deadly Weapon by a Person Prohibited.[1]

3. On May 2, 2003, Defendant was sentenced to a total of 29 years at Level V incarceration followed by one year at Level IV.

4. Defendant filed a direct appeal to the Delaware Supreme Court. On July 2, 2004, the Delaware Supreme Court affirmed the judgment of the Superior Court.[2]

5. On November 4, 2005, Defendant filed his first motion for postconviction relief. Defendant's motion for postconviction relief was denied by the Superior Court on May 9, 2006.[3]

6. Defendant filed the subject motion, his second motion for postconviction relief, on August 26, 2013.

---

[1] See, Superior Court Docket No. 18.
[2] *Fletcher v. State,* 2004 WL 1535728 (Del.).
[3] *Fletcher v. State,* 2006 WL 1237088 (Del.Super.).

1

**FACTS**

7.     The facts giving rise to the subject charges, as set forth by the Delaware Supreme Court in its opinion on Defendant's direct appeal, are set forth below.

8.     On November 3, 2001 at 1:50 a.m., Defendant admittedly fatally shot Richard Holland, but claimed that he acted in self-defense.[4]

9.     At trial, Defendant Fletcher claimed self-defense and testified as follows: Holland and two other men tried to rob him at gunpoint.  After an exchange of words, Holland pulled out a gun and Fletcher (who had extensive training in the martial arts) "charged him."[5] Both men struggled over the weapon, bumped into a van, and the gun went off twice- "as quick as you can blink."  On a videotaped police interview, however, Fletcher made statements that the prosecution regarded as an admission by Fletcher that the second shot was not fired accidentally.[6]

10.     The State presented two purported eyewitnesses to the shooting.  The first, Jerry Taylor, a friend of the victim (Holland), testified that he had planned to meet Holland at the place and time of the shooting.  As Taylor approached Holland, he saw Fletcher walking up to the victim, who was standing alone.  Although Taylor did not hear any words being exchanged, he did see the victim's hands go up into the air, and immediately thereafter he (Taylor) heard one gunshot.  Taylor ducked behind a car, heard a second shot "like seconds afterward," then saw Holland fall to the ground and Fletcher run down the alley.[7]

---

[4] *Fletcher v. State,* 2004 WL 1535728, at *1 (Del.).
[5] *Id.*
[6] *Id.*
[7] *Id.*

2

11. The second eyewitness, Marvin Cross, testified that he was sitting in his car listening to music in front of the house of his friend, Ivan Simonet, for whom he (Cross) was waiting. Cross testified that although he was not focusing on the victim, he saw the events out of the corner of his eye. When asked if he was under the influence of drugs or alcohol at the time, Cross responded "no, probably not yet." The gunshots and the flash from the barrel drew his attention to the scene, which was five or six houses up from where Cross was parked.[8]

12. Out of the corner of his eye, Cross saw Fletcher approach the victim. It appeared that Fletcher and Holland exchanged words, although Cross could not hear the words. Cross saw the victim put his hands out to the sides with palms up, heard the two shots, and then saw the victim fall to the ground and Fletcher running right past his car. The police arrived within a few seconds, but Cross drove off without talking to the police. Shortly thereafter, Cross returned and talked to Simonet about the shooting. A few days later, Cross contacted the Wilmington Police and told detectives the story recited above.[9]

13. The defense contended that Cross was not, in fact, a witness to the shooting, but, rather, had obtained information about the shooting from Simonet and others in order to "sell" it to the police to seek "a deal" for his wife, who was facing criminal charges. At trial, Fletcher sought to impeach Cross's testimony with evidence that Cross came to the scene only after the shooting and asked Simonet what had happened.[10]

---

[8] *Id.*
[9] *Id.*
[10] *Id.*

3

## PRIOR POST CONVICTION CLAIMS

14.     On direct appeal, one of the claims raised by Defendant was that the jury should not have been instructed on the lesser-included offenses of Murder Second Degree and Manslaughter (in addition to the indicted offense of Murder First Degree).[11]

15.     Defendant contended that an instruction on a lesser degree of homicide was incompatible with the State's contention that the murder was intentional.[12]  Moreover, Defendant contended that there was insufficient evidence to support a finding of recklessness, which is required to convict for both of the lesser-included offenses.[13]

16.     The Delaware Supreme Court held, however, that there was a rational basis in the videotaped interview of Fletcher with the police for the trial court to have instructed the jury on the lesser-included offenses.[14] On a videotaped police interview, Fletcher made statements that the prosecution could regard as an admission that the second shot was not fired accidentally.[15]

17.      The Delaware Supreme Court found Defendant's claim to be without merit, found that the trial court had properly instructed the jury on the lesser-included offenses of Murder Second Degree and Manslaughter (in addition to the indicted offense of Murder First Degree), and  affirmed the decision of the Superior Court.[16]

18.     Thereafter, on November 4, 2005, Defendant Fletcher filed his first motion for postconviction relief.[17]  In that motion, Defendant raised ineffective assistance of counsel claims arising from the alleged deficiencies with the jury instructions.  Specifically,

---

[11] *Fletcher v. State,* 2004 WL 1535728, at  *3 (Del.).
[12] *Fletcher v. State,* 2004 WL 1535728, at  *3 (Del.).
[13] *Fletcher v. State,* 2004 WL 1535728, at  *3 (Del.).
[14] *Fletcher v. State,* 2004 WL 1535728, at  *3-4 (Del.).
[15] *Id.*
[16] *Fletcher v. State,* 2004 WL 1535728, at  *3-4 (Del.).
[17]  See, Superior Court Docket No. 48.

4

Defendant contended that his counsel was ineffective for failing to request an acquittal based on his accident/self-defense claim and by failing to obtain jury instructions related to his self-defense claims.[18]

19. In Defendant's first motion for postconviction relief, Defendant's trial counsel responded to Defendant's Rule 61 claims and denied that they were ineffective in any respect.[19]

20. The Delaware Superior Court observed that Defendant's trial counsel "vigorously" objected to the jury instructions on the lesser-included offenses of Murder Second Degree and Manslaughter and that those instructions were given over defense counsel's objection. The court further noted that the trial court instructed the jury on the Defendant's Justification Defense.[20]

21. In deciding Defendant's first Rule 61 motion, the Delaware Superior Court fully and thoroughly considered Defendant's claims. Following its diligent and thorough review, the court denied Defendant's motion concluding that Defendant failed to show that his trial counsels' conduct of his defense, including the handling of the jury instructions was deficient in any respect, or that the alleged ineffective assistance resulted in any prejudice to him.[21]

## THE SUBJECT RULE 61 MOTION

22. On August 26, 2013, Defendant filed a second *pro se* motion for postconviction relief.[22] Defendant also filed a motion seeking the appointment of counsel. The motion

---

[18] Superior Court Docket No. 48; *Fletcher v. State,* 2006 WL 1237088 (Del.Super).
[19] See, Superior Court Docket Nos. 49 and 50.
[20] *Id.*
[21] *Fletcher v. State,* 2006 WL 1237088, at *4-5 (Del.Super).
[22] Superior Court Docket No. 60.

5

for the appointment of counsel was granted and counsel was appointed.[23] Following the appointment of counsel, the motion was assigned to the undersigned Commissioner for review and recommendation.

23. Defendant's assigned Rule 61 counsel filed an Amended Motion for Postconviction Relief on August 25, 2014. In the subject motion, as amended by Rule 61 counsel, Defendant claims that trial counsel was ineffective for failing to request that the court include the justification/self-defense instruction be made applicable to every charge in the indictment as well as the lesser-included offenses of Murder Second Degree and Manslaughter.

24. Before making a recommendation, the Commissioner enlarged the record by directing Defendant's trial counsel to submit Affidavits, jointly or separately, responding to Defendant's ineffective assistance of counsel claim. Thereafter, the State filed a response to the motion. Defendant was also given an opportunity to file a reply thereto.[24]

25. For the reasons discussed below, the claim raised in the subject motion is procedurally barred and without merit.

### A) Procedural Bars Preclude Consideration of Defendant's Motion

26. Prior to addressing the substantive merits of any claim for postconviction relief, the Court must first determine whether the defendant has met the procedural requirements of Superior Court Criminal Rule 61.[25] If a procedural bar exists, then the claim is barred, and the Court should not consider the merits of the postconviction claim.[26]

---

[23] See, Superior Court Docket No. 59.
[24] Super.Ct.Crim.R. 61(g)(1) and (2).
[25] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[26] *Id.*

6

27. Rule 61(i), in effect at the time Defendant filed his Rule 61 motion, imposed four procedural imperatives.[27] Rule 61(i) required that: (1) the motion must be filed within three years of a final order of conviction;[28] (2) any basis for relief must have been asserted previously in a prior postconviction proceeding; (3) any basis for relief must have been asserted at trial or on direct appeal as required by the court rules unless the movant shows prejudice to his rights or cause for relief; and (4) any basis for relief must not have been formally adjudicated in any proceeding. The bars to relief under (1), (2), and (3), however, do not apply to a claim that the court lacked jurisdiction or to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction.[29] Moreover, the procedural bars of (2) and (4) may be overcome if "reconsideration of the claim is warranted in the interest of justice."[30]

28. In the subject case, Defendant's claim is procedurally barred because Defendant filed this motion more than three years after his final order of conviction. Defendant raises nothing new or recently discovered. Indeed, the issue that he raises in his subject motion, challenging the adequacy of the jury instructions, was also raised on direct appeal, which was decided by the Delaware Supreme Court in 2004. In addition, Defendant again challenged the adequacy of the jury instructions in his first timely filed motion for postconviction, which was filed in 2005 and decided in 2006.

---

[27] Rule 61(i) was revised effective June 4, 2014. Defendant filed his motion on April 25, 2014, before the effective date of the revisions.

[28] Since the final order of conviction occurred before July 1, 2005, the motion must be filed within three year. If the final order of conviction occurred on or after July 1, 2005, the motion must be filed within one year. See, Super.Ct.Crim.R. 61(i)(1)(July 1, 2005).

[29] Super.Ct.Crim.R. 61(i)(5) (pre-June 4, 2014).

[30] Super.Ct.Crim.R. 61(i)(4) (pre-June 4, 2014).

29. Defendant's final order of conviction was in July 2004, and this motion was filed in August 2013, over 9 years later. Defendant's first motion for postconviction relief was filed in 2005 and decided in 2006, over 7 years prior to the filing of the subject motion. This motion was filed well outside the applicable three year limit. Defendant's claim, at this late date, is time-barred.

30. In addition to being time-barred, Rule 61(i)(4) also precludes the court's consideration of Defendant's claim presented herein since the claim was already raised and adjudicated in some fashion on direct appeal and again in Defendant's first postconviction relief motion. The claim is now procedurally barred as previously adjudicated.

31. As previously discussed, Defendant has already raised claims challenging the adequacy of the jury instructions on direct appeal and again in his first motion for postconviction relief. Indeed, in his first motion for postconviction relief, Defendant claimed that his counsel was ineffective for failing to obtain jury instructions related to his self-defense claims. Defendant raises the same contention here in his second motion for postconviction relief.

32. In the subject motion, Defendant re-states, refines and re-raises his claim challenging his counsel's conduct for failing to obtain jury instructions related to his self-defense claims as to all the charges. This claim has already been fully and thoroughly considered in Defendant's first motion for postconviction relief. The court is not required to re-examine claims that already received substantive resolution on direct appeal, and in

8

a prior Rule 61 motion, because the claim has now been refined, restated and recouched.[31]

33.     To the extent that Defendant did not fully raise the subject claim in his prior post-conviction motion, Rules 61(i) (2) and (3) would prevent this Court from considering any additional arguments or claims not previously raised. Defendant had time and opportunity to raise any issue in his prior, first, timely filed, Rule 61 motion and either did so, or neglected to do so.   Indeed, Defendant's claim regarding the inadequacy of the jury instructions stem from his trial which took place in 2002, over 13 years ago.  Obviously, Defendant was aware of, had time to, and the opportunity to raise this claim in a timely filed motion.  Having already been provided with a full and fair opportunity to present any issues desired to be raised, any attempt at this late juncture to raise, refine or re-state a claim is procedurally barred.

### B) Defendant's Claim is Without Merit

34.     In addition to Defendant's claim being procedurally barred, it is also without merit.

35.     Defendant, in his Rule 61 motion, claims that his trial counsel was ineffective for failing to request that the court include the justification/self-defense instruction be made applicable to every charge in the indictment as well as the lesser-included offenses of Murder Second Degree and Manslaughter.

36.     To prevail on an ineffective assistance of counsel claim, the defendant must meet the two-pronged *Strickland t*est by showing that:  (1) counsel performed at a level "below an objective standard of reasonableness" and that, (2) the deficient performance

---

[31] *Johnson v. State,* 1992 WL 183069, at *1 (Del.); *Duhadaway v. State,* 877 A.2d 52 (Del. 2005).

prejudiced the defense.[32] The first prong requires the defendant to show by a preponderance of the evidence that defense counsel was not reasonably competent, while the second prong requires him to show that there is a reasonable probability that, but for defense counsel's unprofessional errors, the outcome of the proceedings would have been different.[33]

37.    Mere allegations of ineffectiveness will not suffice; instead, a defendant must make and substantiate concrete allegations of actual prejudice.[34] An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of conviction if the error had no effect on the judgment.[35]

38.    When a court examines a claim of ineffective assistance of counsel, it may address either prong first; where one prong is not met, the claim may be rejected without contemplating the other prong.[36]

39.    Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's conduct fell within a wide range of reasonable professional assistance.[37] Moreover, there is a strong presumption that defense counsel's conduct constituted sound trial strategy.[38]

40.    In considering post-trial attacks on counsel, *Strickland* cautions that trial counsel's performance should be reviewed from the defense counsel's perspective at the time decisions were being made.[39] It is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of

---

[32] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).
[33] *Id.* at 687-88, 694.
[34] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).
[35] *Strickland v. Washington,* 466 U.S. 668, 691 (1984).
[36] *Strickland,* 466 U.S. at 697.
[37] *Albury v. State*, 551 A.2d 53, 59 (Del. 1988); *Salih v. State*, 2008 WL 4762323, at *1 (Del. 2008).
[38] *Strickland v. Washington,* 466 U.S. 668, 689 (1984).
[39] *Stickland*, 466 U.S. at 688-89.

counsel was unreasonable.[40] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting efforts of hindsight. Second guessing or "Monday morning quarterbacking" should be avoided.[41]

41. The United States Supreme Court recognized that there are countless ways to provide effective assistance in any given case.[42] Even the best criminal defense attorneys would not defend a particular client in the same way. Consequently, defense counsel must be given wide latitude in making tactical decisions.[43] Counsel's representation must be judged by the most deferential of standards. There is a strong presumption that defense counsel's conduct constituted sound trial strategy.[44]

42. It is against this backdrop that Defendant's claim of ineffective assistance of counsel is considered.

43. Defendant claims that trial counsel was ineffective for not requesting a self-defense/justification jury instruction on every charge in the indictment as well as the lesser-included offenses of Murder Second Degree and Manslaughter. In this case, however, trial counsel did not request, and did not want the court to even instruct the jury on the lesser included offenses. Defense counsel's position at trial was that there was insufficient evidence to support any finding of recklessness, which is required to convict for both of the lesser-included offenses. Defense counsel's position was that Defendant acted intentionally, in self-defense.

44. Indeed, in trial counsels' respective Affidavits, they explained that they did not request that the justification/self-defense instruction be given to every charge in the

---

[40] *Stickland*, 466 U.S. at 688-89.
[41] *Stickland*, 466 U.S. at 688-89.
[42] *Harrington v. Richter,* 131 S.Ct. 770, 787-788 (2011).
[43] *Harrington v. Richter,* 131 S.Ct. 770, 788-789 (2011).
[44] *Strickland v. Washington,* 466 U.S. 668, 689 (1984); *Harrington v. Richter,* 131 S.Ct. 770 (2011).

11

indictment or to the lesser included offenses. Defense counsel reasoned that "if the jury believed the evidence of self-defense, then the jury would find the defendant not guilty of all offenses, including potential lesser included offenses. On the other hand, if the jury did not believe the evidence of self-defense, then the jury would find defendant guilty of whatever crime(s) the jury found to have been proven beyond a reasonable doubt."[45]

45. Defendant, in his Rule 61 motion, contends that because the Delaware Supreme Court does not bar a justification instruction for crimes requiring a reckless state of mind, trial counsel was ineffective for not requesting such an instruction. However, just because a justification instruction is not precluded does not mean that defense counsel must always request that such an instruction be given.

46. The decision not to request that the justification/self-defense instruction be given to every charge of the indictment or to the lesser included offenses was a strategic decision. Defense counsel must be given wide latitude in making tactical decisions. Great weight and deference are given to tactical decisions by trial counsel. There is a strong presumption that trial counsel's conduct constituted sound trial strategy.[46]

47. Counsel made a strategic decision not to focus on the lesser included offenses and counsel did not want to distract the jury from Defendant's primary defense. Defendant's position was that he was justified in using deadly force which negated any lesser offenses being applicable.[47] Defendant did not want any lesser-included offenses, being content to have the jurors vote up or down on his justification defense.[48]

---

[45] Affidavit of William T. Deely, Esquire- Superior Court Docket No. 72; Affidavit of J. Brendan O'Neill, Esquire- Superior Court Docket No. 73.

[46] *Strickland v. Washington,* 466 U.S. 668, 689 (1984); *Harrington v. Richter,* 131 S.Ct. 770, 787-789 (2011).

[47] December 18, 2002 Trial Transcript, at pgs. 3-35.

[48] See, *Jolly v. State,* 1995 WL 715868 (Del.)(In an attempted murder first degree case, over Defendant's objection the trial court instructed the jury on the lesser included offense of assault in the first degree.

48.     In *Mathis v. State,*[49] the Delaware Supreme Court held that defense counsel's decision in failing to raise a claim of "imperfect self-defense" and failing to request jury instructions applicable to the lesser-included offenses was reasonable trial strategy and not ineffective assistance. Counsel made a strategic decision not to spend much time on the lesser included offenses and did not want to distract the jury from defendant's primary defense of justification.[50]

49.     Defense counsel in this case, like defense counsel in *Mathis,* did not want to distract the jury with lesser included offenses and defenses potentially available to those lesser included offenses. Here, defense counsel vigorously opposed any jury instruction on the lesser included offenses and contended that there was insufficient evidence to support a finding of recklessness, which is required to convict for both of the lesser included offenses. Defense counsel's strategy does not appear to be deficient in this regard.

50.     In *Clark v. State,* 65 A.3d 571 (Del. 2013), a case decided eleven years after the subject action was tried (2002), and nine years after the final order of conviction (2004), defense counsel in that case employed a different trial strategy. Unlike in the subject action, in the *Clark* case, defense counsel requested that the trial court instruct the jury on the lesser included offenses of murder in the second degree and manslaughter and requested that the defense of justification be given as to the lesser included offenses under the facts of that case.[51]

_____

Defendant, however, repeatedly told the court that he did not want any lesser-included instructions being content to have the jurors vote up or down on his justification defense. It was defendant's position that he was justified in using deadly force which therefore negated any lesser offenses being applicable.)

[49] 2009 WL 405872 (Del.).

[50] *Id.*

[51] *Clark v. State,* 65 A.3d 571 (Del. 2013).

51.     In that case, the Delaware Supreme Court held that 11 *Del. C.* § 470(a) does not bar a justification instruction for crimes requiring a reckless mental state. The Delaware Supreme Court held that where appropriate, and when requested, the trial court should give a justification instruction on Murder in the Second Degree or Manslaughter, charges requiring a reckless, rather than an intentional, mental state.[52]

52.     But just because counsel can request a justification instruction for lesser included offenses requiring a reckless rather than an intentional mental state, does not mean that they must. In *Clark*, defense counsel requested that lesser included charges, requiring a reckless mental state, be given. Here, defense counsel vigorously opposed that lesser included charges, requiring a reckless mental state, be given. Here, defense counsel made the tactical decision that they did not want any lesser included charges or defenses that would distract the jury from Defendant's primary defense. Even the best criminal defense attorneys would not defend a particular client in the same way. Defense counsel must be given wide latitude in making tactical decisions.[53]

53.     Under the facts and circumstances of this case, Defendant has failed to show that trial counsel's handling of the jury instructions was deficient. Defense counsel must be given wide latitude in making tactical decisions. It is all too easy to second-guess counsels' decision after conviction. Defense counsel must be judged by the most deferential of standards and there is a strong presumption that defense counsels' decision constituted sound trial strategy. Defendant, in this case, has not overcome that heavy burden.

---

[52] *Id.*
[53] *Harrington v. Richter,* 131 S.Ct. 770, 788-789 (2011).

14

For all of the foregoing reasons, Defendant's Motion for Postconviction Relief should be denied.

**IT IS SO RECOMMENDED.**

_____
Commissioner Lynne M. Parker

oc:    Prothonotary
cc:    William T. Deely, Esquire
       J. Brendan O'Neill, Esquire